The next case on the calendar is Reina v. Sessions. May it please the Court, my name is Erin O'Neill Baker, and I represent the petitioner, Oscar Reina. I'm honored and privileged to be here before you today to explain why the petitioner, Oscar Reina, is eligible for cancellation of removal as a spouse who was subject to battery and extreme cruelty. Mr. Reina is a 42-year-old father of four. He was born in El Salvador, and he has been in the United States since 1994. He's the father of four U.S. citizen children, two of which are freshmen in college this year. He has been in removal proceedings for the past 13 years, and yesterday he was informed that he will be forced to leave the United States on November 27th of this year. He has been ordered to buy a plane ticket to depart the United States. He would be leaving his family and his children and his third wife, the mother of his two youngest children. But today we are focused on his marriage to his second wife, Anna Santana. We are focused on the treatment that Mr. Reina suffered during his marriage to Anna Santana in that her actions toward him were, he was the subject of battery and extreme cruelty and is therefore eligible for cancellation of removal pursuant to Section 240A.B.2. Today I'd like to point out that this court does have jurisdiction to hear this case because a determination of battery and extreme cruelty is a mixture of fact and law that is viewable by this court. Also, the petitioner here has properly exhausted his administrative remedies, including issue exhaustion. Well, we have jurisdiction if the BIA used an erroneous legal standard, if its underlying factual determination was flawed by an error of law, or if its conclusion lacked rational justification. That's one way we have described these questions of law and constitutional claims because that's all we have jurisdiction over. I'm having difficulty understanding how we have jurisdiction here. Thank you, Your Honor. I would like to point out and go directly to Mr. Reyna's testimony and the evidence that was presented in front of the immigration judge. And you see here that his testimony does require a conclusion that is different than what the board and the immigration judge found. And there were mischaracterizations of his testimony, and there were facts that were not considered by the board and the immigration judge. If I may point your attention to the record in which Mr. Reyna testified that he was threatened with a knife. His wife met him at the front door with a knife and did not let him in. She would physically kick him out of bed. She also threatened his life and fantasized about cutting him into pieces. The record at page 126 and 127. He says, every night she used to say, you know, I want to cut you into pieces. Well, that's his testimony, right? Correct, yes. And one of the things that the immigration judge and the BIA suggested was that this was not adequately corroborated. Is that overlooking some important corroboration that they should have referred to? The evidence of the ongoing pattern of violence and abuse was corroborated by his first wife's mother, who is the grandmother of his two children. And that is Sandra Roberts. She states, she testified with the immigration judge, she corroborated that Miss Anna Santana, her behavior changed around the children, and she specifically testified that she was acting bizarre, that he locked him out of the house, that he was demeaning to the petitioner, and she recalls Miss Santana threatening Mr. Arena with a frying pan. But threatening with a frying pan is a very different thing than scalding him. I mean, it seems to me that a reasonable fact finder, it's up to a fact finder, not up to me, a reasonable fact finder could have seen that as not corroborating the testimony that he actually was burned by his wife. You have his testimony in this case, and she's corroborating the event itself. But he specifically points out that it did occur. Also... Well, what she said, this was at 164. Yep. Was there a question, were there any kinds of incidents that he referred to you or told you about involving her and he perhaps of a threatening or violent nature? Answer, just things that he has told me. So number one, it's hearsay in that sense. I think there was an incident about a frying pan. Ah, it's so long ago, I don't remember the details. But she acted bizarre. And there was another thing about food. I have to ask him the details. Why should, at a very minimal, why should any weight be given to something that is so vague, so little remembered, and is a function of not personal knowledge, but hearsay from the petitioner? I think if you look at the testimony as a whole and you see that this woman who was testifying was the mother-in-law from an ex-wife, and she was present, she was raising the two children, she had credibility with the court in that she was present during the entire relationship, even though she was not the mother of who Mr. Reyna was married at the time. But there's a problem with that, right? You're saying she's there all the time, but she doesn't see any of the things that are the real allegations of violent behavior. She does mention that it wasn't the entire marriage that there were incidents. I mean, the petitioner here is very specific that her behavior changes after he was detained by immigration, that she began acting bizarre and ratcheted up this abusive and extreme cruelty toward him. And it is Ms. Roberts' testimony that says that she does remember the incidents, that she was afraid for the children, that Ms. Santana was acting bizarre. So it doesn't have to be the entire scope of the marriage itself. Also, it is the pattern of violence toward the individual, and in this case, the immigration judge and the board came to a conclusion without justification, and that gives this court jurisdiction to hear this matter. Thank you. Thank you. May it please the court. My name is Matthew Connolly, and I represent the Attorney General of the United States. Your Honor, this court does not have jurisdiction to review the agency's determination that Mr. Reyna was not subjected to bad or extreme cruelty. 8 U.S.C. 1252 removes jurisdiction for discretionary determinations made for grants of cancellation of removal or denials. While the court has jurisdiction to review legal issues and constitutional claims, the petitioner has not raised a colorable legal issue. This court has held, in the case of Rosario v. Holder, that, as the court mentioned earlier, there's only three instances when the question of battery or extreme cruelty can be reviewed, and the petitioner's brief does not raise colorable issues with regard to either an incorrect standard of law, an error of law for the findings of fact, or that the ultimate conclusion is without rational justification. The petitioner's argument that the standard of law regarding corroboration and credibility does not apply is incorrect because that same standard is covered by 8 U.S.C. 1229A, which covers all removal proceedings. The petitioner has not specifically identified evidence that has been overlooked or mischaracterized. The petitioner has raised arguments which, in effect, question the weight that the board attached to various pieces of evidence, and I also question the ultimate conclusion, but that's not the same as a conclusion rooted in an error of law. And finally, the petitioner has not explained the assertion that the board's conclusion is without rational justification. Because the petitioner has not raised a colorable issue of law, this court lacks jurisdiction, and if the court has no questions, then the government will rest on its arguments, both here and in its brief. Thank you, Your Honor. Thank you. There are two points where the facts were mischaracterized by the immigration judge. In the record, page 39, the immigration judge erroneously stated that the relationship which USCIS determined was not even a bona fide based on the denial of the I-130 petition. That is completely wrong. That is not a fact, and it is not actual at all. A completely erroneous fact. Also, the immigration judge mischaracterized the relationship in that he stated that the judge stated that the relationship appears that the relationship did not work out. He claims that she was mean towards him, but again, that is one side of a relationship. And in this case, there is much more that was testified not only in front of the immigration judge, but in his statements under oath, and the immigration judge and the board was presented with specific details of battery and extreme cruelty during that merits hearing. There are specific instances where his testimony is regarding the intentionally trying to burn him in the shower, and that is at page 127 and 128, that she threatened his life and to cut him into pieces in page 126 and 127, and he was often met at the door with a knife to prevent him from entering the house, and that she many times tried to, he uses the word poke with a knife, and that he was pulled out of bed on multiple occasions and his life was threatened. So this testimony goes beyond what is rational to believe that this conclusion made by the board and the immigration judge could not conclude that he did not suffer from battery and extreme cruelty. Thank you. Thank you both.